We will hear argument first this morning in Case 21-1397, In Re Grand Jury. Mr. Levin. Mr. Chief Justice, and may it please the Court, the Significant Purpose Test protects clients' ability to seek bona fide legal advice from lawyers in situations where legal and non-legal purposes can't be separated. The Ninth Circuit's Primary Purpose Test denies the privilege to communications that have a legal purpose any time a court later finds that the non-legal purpose outweighs the legal purpose, even by a little bit. Taken seriously, that test requires parties and courts to disentangle competing purposes and to identify the single most important one. That is an inherently impossible exercise, and it creates the kind of uncertainty this Court warned against in Upjohn. And Upjohn is instructive for other reasons here, too. The investigation there obviously had business implications, but the Court focused on the legal purposes. The government argued there, as it does here, that the privilege was unnecessary for communications that would have been made anyways, and the Court rejected that. The government argued there, like it does here, the privilege would be too broad. The Court rejected the government's control group test because it was unpredictable and frustrated full and frank communications. And just like in Upjohn, reversing here will not open the door to misuse of the privilege. Underlying facts are never privileged. If one part of a document has legal communications and a different part non-legal, redactions are used. The proponent of the privilege still has the burden to meet all of the elements. And ordinary doctrines like crime fraud create additional guardrails. This Court should reverse the Ninth Circuit and adopt a significant purpose test, and I'd welcome the Court's questions. If you have a purpose that is admittedly significant, but also admittedly subsidiary, then how would you handle that? How would you analyze that? From our perspective, that would be a privileged communication. And the reason for that is there is a legal purpose, an admittedly legal purpose to the communication. Were you to say, even if it were undisputed, the bigger purpose is non-legal and still take away the privilege, you still wouldn't be protecting that legal communication. Now, if they're separate, if one is over here in this part of a document and the other is over here, you can redact and just disclose the non-legal. So how subsidiary would it have to be in order not to meet your tests? It has to be a bona fide legal purpose. It has to be real and legitimate. We think that's the easiest way? I don't think that's the point I'm after. It could be legitimate, but a very minor subsidiary point. But to you, it could be significant. So would you tease that out a bit, how you would analyze that under your test? Sure. Under our test, the proponent would have to show that there was a bona fide, that is a legitimate legal purpose to the communication. If they could show that, whether how the degree of significance, whether it was 25 percent legal, 33 percent legal, 42 percent legal, wouldn't matter. The point is, once you get over the threshold of it is a real and legitimate legal purpose, the privilege should attach. Can I ask a clarifying question about the difference between your opening brief and your reply brief on that? Going to Justice Thomas' question, maybe not difference, but clarification in your reply brief. Significant, as you're understanding it, is not about the size or the amount of the legal purpose, but rather is about, as I understand your reply brief, whether the legal purpose is legitimate, genuine, bona fide. Is that correct? That's correct, Your Honor. Well, I mean, bona fide means good faith, right? I mean, let's say you've got five different legal arguments, you know, one, two, three, four. Five is bona fide. It's in good faith. Maybe it will work. Maybe it won't. Is that a document privileged in that situation? It is privileged. Unless you can separate out the non-legal, it is privileged. And the reason for that is it's too hard ex ante to require people to make a judgment about how important or what is the relative importance of the legal and non-legal considerations here. Take the settlement context like the D.C. Circuit talked about in Boehringer. You have someone who cares about the business reasons for settlement, how much it's going to cost, all of those things, and the legal reasons, which is liability, risk, potential damages, and so forth. You don't necessarily know which is going to be more important, so long as there is a bona fide legitimate legal reason, the privilege should attach if the legal and non-legal are mixed up together. Well, I know. But that — yes. But you can affect how that determination is going to be made, I guess, by throwing in every reason you can. You know, should I put — your client says, should I put in this amount or that amount? And you go through analysis. Well, maybe this, maybe that. And then, you know, just even if you've only got a 10 percent chance of prevailing, it could still be bona fide. And does that cover the — does that change the communication from sort of an accounting one to a legal one? So long as it's bona fide, then the answer — our answer is yes. And part of it is, imagine a scenario where it wasn't that way. Well, look, I don't mean to interrupt, but just want to make sure we're using the same terms. By bona fide, you mean something that a lawyer would actually think. It's not just making it up. Just sort of — yeah, that's — I mean, lawyers make arguments that they think have a 10 percent chance of prevailing, and it doesn't mean they're in bad faith. It just means it's a stretch. A long shot. It has to be legitimate or bona fide to guard against pretext. Everybody agrees you can't just copy a lawyer on a communication. You can't just have a lawyer sit in the corner of a meeting and say the whole thing's privileged. That's what it's really guarding against. But can I ask you, what level are we doing this at? I mean, I didn't understand us to be talking about entire documents. I thought the court was going through and looking at particular communications, almost like the segregability requirement in the FOIA context. Am I wrong about that? You're not wrong. It can be segregable all the way down to the sentence level, which is — the district court in certain instances here did order redactions at the sentence level. All right. So if I'm right about that, I guess I'm trying to understand what is a dual purpose communication. Because if you were in a document and you're going sentence by sentence or line by line trying to assess is it legal, is it non-legal, you're doing that exercise, and you seem to admit that there are going to be some that are clearly in one bucket or the other. So are you just talking about the sentences or the paragraphs in which it's kind of hard to tell is it legal or non-legal? And if that's the world of dual purpose communication, why is it that when we're in that ambiguous circumstance, it should essentially automatically be deemed legal? So that is the world in the sense of — now, it might be at the sentence level. It might be at the document level. It's very hard to prophylactically say it's always going to be at this level or another. But someone goes in and asks the lawyer, should I fight for the house in the divorce? There's property, there's legal part of that, and there's probably emotional and personal parts of that, and it's tied together. So you can have situations where it's very hard to disentangle, if not impossible to disentangle. But, I mean, in the document you're looking, there's a paragraph that describes the house, and it's all factual. And would you agree that that would not be privileged because it's just the facts? Well, not necessarily. It really depends on the context. Because if it is — if the purpose of describing the house is to inform the lawyer so that they have the facts in order to bring a legal judgment about, is it marital property, is it not? When did you buy it? That would be really important. Is that really how we ordinarily do attorney-client privilege? I thought even parts of an attorney's memo that had factual information aren't covered by the privilege. The underlying facts are never privileged. That is, you can always get those. But the communication of those facts, that's right out of Upjohn. So when they went and interviewed employees at Upjohn, the communication of information to the lawyers was privileged. The government, of course, could go out and interview the same people and get the same information. They just — what they couldn't get is the communication between client and lawyer, if that communication was for the purpose of the lawyer then rendering legal advice. So it does — sometimes the transmission of facts by client to lawyer is privileged. That's a very typical situation. But you're saying the amount doesn't matter. So we have this memo. It's about the divorce. And, you know, 90 percent of it is the description of the background facts, and we have a sentence, the lawyer says X. You're saying that because the whole thing was created for the purpose of legal advice, it's covered under your view? If the proponent can meet that burden, then yes. And the problem is if you tip the other way, you say, no, it's got to be 51 percent legal. It's got to be primary. It's got to be the single biggest. A conscientious lawyer, when you get into these mixed purposes, is going to have to advise a client. We are now in a world in which we're talking about legal and non-legal. I need to advise you. A court might later say this is not the primary purpose, and therefore it might not be privileged. So it's going to create a chill on that communication because a lawyer who takes the test seriously is going to need to say to her client, I can't be confident here. This is going to be privileged in a confidential communication. I have a slightly different problem. As I understand the situation currently, the vast majority of states use the primary purpose test. You are asking us to change their common law test, I assume just for purposes of federal law, because the federal rule of evidence 501 tells us that in any civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. So how is this going to work? In federal court, we're going to say you apply this significant test, and in state cases, you apply the primary test? Well, let me say two things, Your Honor. One is when you look at the state cases, the state cases cited in the government's brief as examples of primary purpose cases, many of those, they say primary predominant purpose, but then they just look, is there a legal purpose? Take the Spectrum case from New York. It says primary predominant purpose is the test. And then it goes on to say the critical inquiry is whether it was made in order to render legal advice. Well, but that's the point that Justice Thomas raised, which is how do you know that? If 1%, according to your test, if 1% of the purpose of this communication was to render legal advice, the whole communication is suppressed. That's what you're saying to me. There's no percentage to significant. I'm saying it needs to be bona fide or legitimate. So I'm trying to move away from 501. Well, but, I mean, 1% can be. Accountants every day fill out forms and help you figure out numbers and tell you what to do. And a small percentage is always legal advice. I think that this is that. And it may have a legal consequence. And yet we said accountants didn't have privilege. I don't know why lawyer advice that's predominantly business should be Your Honor, let me talk to the accountants. But I still want to go back to this point, the one I started with, which is you're asking us to announce one test for Federal cases and let the States do a different test, however they define that. They've never used the words that you're asking us to use. There are a few States that use significant purpose. Texas is one. But, Your Honor, I would point to Upjohn. The vast majority don't. I don't disagree with that. I would say in Upjohn, the control group test was widely used in Federal and State courts. And after this Court decided Upjohn, almost every State has moved to the Upjohn standard. But that's not our business, is it? No. The Federal rules of evidence is not to give our sense of what's appropriate for the attorney-client privilege. We are directed to look at, in light of reason and experience, and so we should be looking at what those State courts are doing, not dictating to them what to do. Well, this Court won't bind State courts. I agree with that. And this Court does look to reason and experience. And we would say, in fact, reason and experience support the significant purpose test because the primary purpose test, even when it's recited. Tell me, tell me, you make this claim that it's so difficult, but I really haven't seen much to say that it's difficult to administer. I don't see a rounding number of courts in States or even Federal courts saying, I can't figure this out. This particular judge, I think, was meticulous in separating out documents. As you said, this judge picked out sentences and redacted them. This judge upheld your objections to a number of disclosures based on points that you raised with respect to the legal nature of the communication. So I don't see how judges are having the hard time you're talking about. Your Honor, I point to the Polaris case from Minnesota, which was recently decided after the Ninth Circuit's decision here. And it does adopt the primary purpose test. And then you have a majority and a dissent that look at the same investigative report, and they come to diametrically opposite views. I mean, you have one case, Mr. Levin, in your briefs, and now you're raising it again here. But I think Justice Sotomayor's point is a bigger and broader one. I mean, we've had the attorney-client privilege for a long time. And until 2014, nobody ever suggested that the test that you're proposing is the right one. Everybody instead used the primary purpose test. Some used it explicitly. You know, this was one purpose. This was another purpose. Some didn't. But that was the nature of the test, that they understood themselves to be applying constantly. And what Justice Sotomayor is saying is there's no particular evidence of that, nor is there any particular evidence of chill. Why would there be chill? Because by definition, if there is a primary purpose that's non-legal driving the communication, somebody will make that communication because they have a non-legal primary purpose to do so. So this is a big ask, and it's an ask that's not particularly consistent with the underlying nature of what the attorney-client privilege is supposed to be protecting. I don't think it's a big movement. And I would say if you look at the restatement, it does say primary purpose, and then it immediately moves from there to is there a significant purpose in the same comment. In the reporter's note said, American courts look to the significant purpose. I understand that's not the official view of the ALI, but it is a comment about what the courts are actually doing in the main. Well, I have to say, just as you have one case, so, too, you have one treatise or a secondary authority. And that's the restatement. And the restatement is itself equivocal. It goes back and forth. You have one statement. Ms. Hansford has another sentence. So you have one equivocal sentence in the restatement, and everything else points the other way to the primary purpose test. I think the problem, Your Honor, is if you push the primary purpose test to its serious and logical conclusion where you require 51 percent to get there, you will be in a world in which it is very difficult ex ante to predict that, and lawyers will have to start advising clients. I don't know that this conversation will be privileged because we are talking about both, and I don't know how a court will come out. And the other thing I'd say, because you made the point about the communication would have been made anyways. That's a really important point because the government made that point in Upjohn, and the court rejected it in footnote 2. It says it proves too much. You could say that about many, many communications to a lawyer. Someone's in legal trouble, they would have talked to the lawyer anyways because what else can they do? I'm sorry. Finish, please. No, thank you. Well, I mean, following up on this point, I mean, your big policy point is chill, and your point that the lawyer would have to advise the client, I'm not sure if this is going to be privileged, but isn't that the case already? I mean, you don't know whether you're going to be sued on a state claim or a federal claim, and so you might be in a state that, like most states, doesn't follow the primary purpose test. And so that conversation, you could wind up in a situation where that privilege may be in one jurisdiction but not another, if you win. It's certainly theoretically possible you could have a situation where you have a different rule under state and federal law, and that certainly could happen. I don't think that's a reason to not try to come up with the best and most operable and predictable rule. But why wouldn't that chill the communication? Because it's not going to be privileged, say, if someone asserts a state law claim against the client. I'd say that most of the states, and it's certainly true of the states that the government cites in its brief, when you look at their case law, they may say primary or predominant, but then they focus in on, is there a legal purpose or not? So that is, when they apply it, they're applying it the way we say it ought to be applied, which is you go back to the Wigmore test. You ask the basic questions. Are you talking to a lawyer who's acting as a lawyer? Are you communicating for the purpose of legal advice? And if you can meet those thresholds in a legitimate way, it's not going to be privileged, and that is, I'd submit, the way most of the states have actually been applying it. But if they're actually doing it, then it isn't a big change. You can't have it both ways. You just said, I think this is going to make a difference, and now you're saying, no, it's not, because they're already doing it in the way that we're asking you to adopt. Your Honor, I think it's going to make a difference because now we're here. That is, were this court to say, no, we are serious, primary purpose, 51 percent, that would send a message across federal courts, and I would say state courts, too, because they obviously would pay attention. Were this court to say, no, we're going to anchor the test in the traditional privilege, and we're going to say, if you can meet the standards and you can meet them in a real way, that is, there's no pretext, you're not trying to manufacture a privilege in some abusive way, then you have a privilege, and that is a clearer, more predictable test that will appropriately protect attorney-client. Some of the amici in support of you say that communications are privileged as long as any purpose of those communications is to obtain or provide legal advice and no other well-established exception applies. Do you agree with that? I agree as long as it's legitimate and meaningful. That is, if it is really a facade, no, then I don't agree with that. It has to be a legitimate, bona fide legal purpose. Do you think there's a difference between something being significant and something being done not in good faith, not bona fide? Yes, I think those are the two sides. So you've changed your position. You're not really arguing for a significant purpose. You're arguing for any legitimate purpose. No, I don't think that that's, I mean, I guess what I would say is I don't think that's how I read our position as saying, if it's legitimate and bona fide, it would qualify as significant. I understand the court could say, no, there's some higher quantum, and I think we'd still win under that, some higher quantum but less than 51%. So I think we would still win, and some of the documents in this case would be privileged under that approach. I think the problem with a quantum approach is then you still get into this, well, we hit the quantum, but we hit a third, we hit 25%, whatever it might be. Can you provide an example or two of an insignificant privilege, I'm sorry, an insignificant purpose? Sure. You call a lawyer to sit in a meeting, to sit in the corner while you talk about business, because hypothetically, maybe the lawyer will spot something and say something. That, I would say, is pretextual. You copy a lawyer on a communication, or maybe you copy them. But why is that pretextual? I mean, actually, you sometimes want a lawyer just to sit in and issue spot and see if he'll come up with anything. You want a lawyer on your email chain just to see if the lawyer spots anything that you're not spotting about how the law relates to a particular course of conduct. So, you know, that seems to me legitimate. It will also basically immunize every communication that a business has. No, Your Honor. I think courts are actually quite good at separating out real from nonreal. This comes up all the time when people review documents, when people look at privilege logs, that just CCing the legal department is not enough. Even if, hypothetically, a lawyer might pipe up. I mean, you still have to meet your burden. You have the burden. The proponent has the burden to convince a judge, no, that there was some real legal purpose going on. In courts, I think... There is a real legal purpose. The real legal purpose is to make sure that the lawyer knows everything that we're doing and raise objections if and when appropriate. So that's a real legal purpose. But, you know, in the meantime, we're discussing a thousand things relating to our business activities. I just don't think courts have done it that way. Without falling back on it's not 51 percent, take the Vioxx case, the government sites, where the company's position was everything that we do where a lawyer's copy is privileged because we're a regulated company. The court rejected that appropriately. But then it said it is relevant. That context that you're a highly regulated company is relevant because we want regulated companies to talk to lawyers. It's not a bad thing to talk to a lawyer. We want the regulated company to talk to the lawyers so they can get advice about how to comply with the law. I mean, that is fundamentally what the privilege is about. We want to encourage people to have open and full communications with lawyers so that we can encourage compliance. And if you set a bar at you've got to get to 51 percent, that will discourage that kind of communication and it will lead to less compliance. I think you're trying to have it both ways. Significance concerns importance. Maybe it's a lot lower, perhaps, than primary. But it does involve a certain quantum of importance. Well, like I said, Your Honor, I do think we would win under were you to say it has to be more than just legitimate. It has to be important. Because I think some of the documents take the one where they're talking about a reasonable cause statement. I think that would qualify as important. I think we would still win. I do think the more predictable test and the one that's easier to implement, even if a little bit broader at the margins, is to say it has to be meaningful and legitimate. Why is that more? Why is that simpler? I mean, I seem to think that what you're having a problem with is a preponderance of the evidence standard. Is it 51% versus 49% or the 50-50 situation? But I see very few courts, and you seem to be saying this, think that if something has almost equal importance, that they're treating it as 50-50. I seem to be seeing that if it's a very significant purpose, that they're finding it's a primary purpose. I guess what I'd say is, as I said before, we would win under significant means important, where we think the problem is to say, no, you've got to find the single primary purpose. That means we've got to rank them, and we've got to find the biggest. That is what the Ninth Circuit said, and it's how district courts in the Ninth Circuit have applied it. And we think that is where the test falls down. And I would say the preponderance standard, it is, of course, everyone understands what it is, 51%. It's very hard to predict. This is why lawyers don't often predict to clients, we're going to win at trial. It's very hard to predict whether something will preponderate or not in the mind of a fact finder later. It's a very difficult prediction to make. Why don't we move on to our next stage here. How would you handle a case where an accountant sits down and goes through it? It's a very complicated form. And the accountant says, I want to have a lawyer look at this. And they bring in Lawyer X, and Lawyer X says, you know, I am the world's expert in this area. I've been doing this for 40 years. In my view, this is all very good, except these three items, you know, they're kind of iffy. I think you should probably not make those. Everything else is good. Here you go. Sends a bill for $200,000. And in that case, is that accessible? Because it's looking at the actual numbers and participating in the preparation of the form. Is the entire thing privileged? Or can the prosecutors get that communication? Well, I think that's privileged, Your Honor. The way you lay it out, that sounds like the lawyer is evaluating what do the tax rules and regulations require and is making legal judgments about them. To me, that's clearly privileged. When you say, as the Ninth Circuit did in this case, communication is a lawyer solely for the purposes of return preparation, we would say that is when you're communicating about here is the information that you're going to give them under the form. It's much more mechanical. If you're talking, if the lawyer is bringing their legal judgment to bear on what the rules and regulations are, tax should be no different than anywhere else. Those are quintessentially legal judgments. They're bringing their training and experience to bear. That's how the restatement comes at the question. Are you using a lawyer as a lawyer if they're bringing their experience and their training to bear on the issue and talking about your legal obligations? Thank you. Justice Thomas? Just one brief question. Is there any non-trivial role that a lawyer plays in the example the Chief gave that doesn't meet your tests? The only one would be if they said, okay, we're going to make changes to the form and I'm going to have the lawyer do it, so send the lawyer this additional data that has to go on a worksheet that's going to get sent to the IRS. So that would be mechanical tax prep. But I think in the main, if the lawyer is making legal judgments using their legal training and experience, it's privileged. Justice Alito? It's not significant then. It's any purpose. Any legal purpose. I think it's any bona fide meaningful legal purpose. Justice Kagan? I'm wondering if you would just comment on the ancient legal principle of if it ain't broke, don't fix it. So here's what I'd say to that, Your Honor. I think we've come to a point, once we had the D.C. Circuit identify the problem in taking really seriously primary purpose and saying you actually do need to rank them and decide which is number one, I think it pointed out that you have a test primary. The courts weren't really, for the most part, actually trying to do and say I'm going to rank them all, I'm going to decide which is number one. And once you've set up that issue, if this court were to say no, we're serious, you've got to rank them, you've got to pick the biggest, it will create a problem where maybe none would have existed if everyone had just gone on the same way, but I think now the issue is presented. Thank you. Justice Kavanaugh? Just to unpack that and your answer to Justice Sotomayor about the case law, my understanding of what you're saying is that courts have articulated primary purpose quite a bit, pretty routinely. But when you actually get into the cases and look at them, they're not actually trying to figure out, at least some substantial portion are not trying to look out what's the 5149 purpose, but are rather doing what you say, and so they're not really doing what the label primary purpose would say. That is our view, Your Honor. Yeah. Justice Barrett? Justice Jackson? So you've identified the problem of courts ranking and coming up with the most significant purpose. But I wonder about the opposite problem, which seems to be what is being teed up by your now, I think, new, perhaps, definition of significant, which is the problem of having a legitimate, bona fide, but as Justice Thomas pointed out, clearly, secondary, subsidiary purpose. You know, we have a situation in which everyone would agree, even the lawyer sitting there, that the primary purpose of this communication is a business decision or discussion. But the lawyer adds a point. And you say, as long as it's a legitimate point, that is good enough to require that the entire thing be privileged. And I guess I see that as problematic. Why shouldn't I worry that using your test now, we are going from one extreme to the other? I don't think it's — I don't think that's going to happen. A couple reasons. One is, just look at this case. There were 1,600 documents or so were produced without any privilege objection. We're arguing about less than 50 as dual purpose. It's not going to just — Yeah, but you're arguing against the backdrop of this test. What I'm worried about is changing it. Yes, in the new world, you wouldn't be arguing. You wouldn't be arguing because you would win them all. Because you would say, I have a lawyer there, and that's all the court had to care about. And that's what I'm concerned about. Well, we took the position in this court, in the lower courts, that the specific and purpose tests are prized. And I think there are still — as I started with, there are many other guard rails that prevent that kind of abuse, that kind of using lawyers as a pretext. The traditional test actually requires a showing by the proponent. Are you talking to the lawyer — as a lawyer? Are you talking for a legal purpose? If you're trying to engage in tax fraud, there is a crime fraud exception. There are lots of — Not a fraud. I'm talking to the lawyer legitimately. He only has, though, a very minor thing to say about this. We're sitting here for five hours, and I turn to the lawyer for 15 minutes and ask him a question. Those 15 minutes are going to be a privileged conversation. It may well be the other — Would the whole thing be, or just the 15 minutes? If I understand what you're saying right, I think we're not saying that you can't — if you can separate legal and non-legal, which sometimes you can, then of course you should disclose the non-legal and withhold the legal. So I don't think you're allowing a situation where you can bring in a lawyer in a pretextual way, or in a small way at the end, at the beginning, and create a privilege that will sweep across everything. I just don't think that's the case. These courts are already quite good at policing that. What you're saying is, if — so fine, we narrow in to the 15 minutes of the lawyer talking as a part of this discussion. That — the lawyer's also communicating business information in his 15 minutes. Right now, it seems as though the test would require the court to figure out, in that 15 minutes, what was really the primary thrust of the communication. That's what the primary purpose — and I don't know that it's like 51 percent. The court is not doing math. They're just sort of looking at the 15 minutes in which it could go either way and making a judgment, which is what courts do, as to what is sort of the primary thing happening here. I think your test would say, don't do that. As long as the lawyer was talking in that 15 minutes, it should be covered as privileged. Right. I mean, go back to the settlement context. The lawyer is talking, and you're talking about what are the potential damages, obviously legal, but also the benefits to the business of the certainty of having litigation behind it. Maybe you want to sell the business and not having the litigation overhang. All of these considerations, lawyers who talk to clients about settlement, those are mixed up all the time. And the idea that you're then going to have to say to the client, well, it sounds like this is kind of a lot of business. This may not be a privileged communication. If there's a real legal purpose in those 15 minutes, you shouldn't be in the business of trying to figure out, okay, how do we rank them? Which is going to be bigger? It's going to create more problems than it solves. Much better to go with the real legal purpose. Thank you, counsel. Thank you. Ms. Hansford. Mr. Chief Justice, and may it please the Court, the public has a right to every man's evidence. The attorney-client privilege creates an important but limited exception to that rule for communications seeking legal advice. But outside the context of legal advice, the every man's evidence rule governs. Employees send emails with trial data showing that a drug caused a serious side effect during trial or evidence that a new design for a car will sharply increase the rate of failure for the car's brakes. Sensitive business conversations with engineers and technical advisors and sales staff have to happen. And when they do, they can be critical evidence in subsequent court proceedings. All agree that such information is not and should not be privileged. But where a client combines a business communication with a request for legal advice or just the presence of an attorney to spot issues, as Justice Kagan indicated, courts need a test to see if the communication is more the kind that is seeking legal advice or more the kind that doesn't need the protection of the privilege. And reason and experience points to the primary purpose test, which has been used, as the discussion this morning indicates, for decades by a huge body of state and federal cases and has been endorsed by commentators from Wigmore to Rice. And I think that body of evidence powerfully rebuts petitioner's assertion that it's too hard to apply the primary purpose test as what courts have been doing. Instead, petitioner introduces a so-called freestanding significant purpose test, which in its reply brief and again repeatedly this morning, petitioner acknowledges is merely a bona fide legal purpose test. Any non-protection legal purpose, no matter how minor, will do. That approach would vastly expand attorney-client privilege to communications that are currently available to grand juries and to the courts. Most directly relevant here, it would create an accountant-client privilege whenever a taxpayer can afford to hire an attorney to prepare his taxes, as I think the exchange with the Chief Justice indicates, and courts across the country have appropriately rejected any rule that allows a well-heeled taxpayer to buy their way into a privilege. I think as the Court of Appeals recognized and for many of the reasons that really was not a close case, and petitioner's effort to expand attorney-client privilege to capture these documents should be rejected. I welcome the Court's questions. I'm interested in the other end of the spectrum here, as opposed to where I was with petitioner. What would you do if the purposes were in equipoise, or if the legal and the legal purpose were not disentangled? Absolutely, Justice Thomas. Our primary submission here is the concern about the end of the spectrum you were discussing earlier, where there is a predominant non-legal purpose, which is the case here. In the difficult cases where the purposes are in equipoise or cannot be disentangled, we have no problem with what we view as the Kellogg Court's approach to those difficult cases, which is to say courts are not doing math. They don't need to try to assign 52%, 48%. Once there are multiple really meaningful purposes and courts can't tell what to do with that, and there isn't a purpose that is clearly predominant, we are fine with kind of a tie goes to the runner rule in favor of the privilege in those cases. Well, that's really asking courts to parse things pretty fine. Is this a 52-48 thing, or is it in fact, you know, a tie? I think it's important to keep in mind what the judges have to do here, which is go through these documents. I mean, 1,600 documents in this case, and I don't even think that's regarded as a big collection. And you get a memo, and it's got — they're talking about three different legal issues, and under your test, the judge is supposed to decide, of these three, this one is the big one. That's the one that's most important, and it doesn't have anything to do with this or whatever. As opposed to your friend's test, which recognizes the reality that, yeah, there are three things there. They're pretty much the same. And the judge, I think, in that case can say, okay, this is privilege, rather than having to look at it much more carefully. I mean, they've got to go through a lot of these documents, you know, in many cases, rather than having to say in each instance, yeah, this one's this one's this much that, as opposed to, yeah, there are three legal issues in this case. He got a memo on three different legal issues. It seems to me that your approach really puts a lot of work on the judge. So, Mr. Chief Justice, three thoughts about that. So, first, I was trying to say that if it's 48-52, we're not asking courts to say, is it 48-52? Is it 50-50? Once they're really close and you can't parse which one is the dominant, we think it's okay. Yeah. I mean, you understand how the next question is. What if it's, you know, 60-40? So, absolutely. And I recognize that there's a lot that district courts need to do to assess application of the privilege. And I guess the first answer I would give on that is that the way courts have been doing this for a very long time is using the primary purpose test. And I think switching to a new test would be really destabilizing and I think would actually reopen a lot of questions that courts have already resolved. And the rules of thumb that I think because of this practical reality, I think it's a practical matter. In certain contexts, courts kind of have rules of thumb that they view a legal purpose as predominating in certain contexts because of that difficulty. And I think switching now would make things harder for district courts. I'm sorry, but it's the point that I understand and understood Justice Kavanaugh to make is that it's not as if they've been doing this for a long time. I mean, your friend could conceivably say they've been doing what he wants for a long time because, yeah, they'll say primary, but in fact, you know, they look at it and if there's, you know, you're going to be focusing on one issue, I don't know that you'd say, well, you're out of luck because I'm going to say this one's primary. I mean, to a certain extent, you know, I think we're talking about labels rather than analysis. So, Mr. Chief Justice, to the extent we're talking about labels, what we care about here is the substance of the test and not diluting the purpose to such a low level that it's really any purpose will do. And I do think that to the extent petitioner's rule is easier to apply, it's really because it's just a rule that everything is always privileged. And in that sense, it's easier, but that's not how we do the privilege analysis. And I think there's a good reason that petitioner moves away from the opening briefs articulation of its test, which was important but less important, because that's actually harder to apply than a primary purpose test. That takes away the inherent measure of a primary purpose test, which is a comparison to other purposes for just some abstract inquiry. And that's why they're replacing it with a bona fide purpose test, which I think would be satisfied in virtually every situation. Well, I think you're walking away from your argument, too. Now, maybe this is artificial, but let me ask this question. We're supposed to look to reason and experience. Let's put experience aside, all right? We're just on the reason part of it. If you say primary purpose and you really mean it, then in the 5149 case, you have to say that that is not privileged, right? I think if there is a portion of a communication and you can say, yes, the predominant purpose was not legal advice, that is not privileged. That's correct. Okay. You think that's easy to administer? Well, I think that what makes it easier to administer is that courts don't think of it that way. So take a look at this. Well, then that's not the real test. Then that's not really what you're arguing for. I think it is the real test because if you look at what the court did in this case. In this case, it was very easy for the court to say — No, but don't tell me about this case and the facts of this case. I want to know what the test is. What's wrong with saying if it's an important — if there's an important legal purpose, then it's privileged? I think that's a very difficult thing for courts to test. Importance, what level of importance? Importance as compared to what? I think that — I think that — and as I was saying, I think there's a reason Petitioner rejects that, but I think the other point I would say is we're setting experience aside, but experience is critical here. If you change it to that test, it would be very destabilizing. Courts have been doing this test for years. I think if you actually look at the cases we cite, virtually every case actually does apply the primary purpose test. They don't necessarily say, here, purpose is A, B, C, let us sway them, but they say this is the primary purpose test. They look at the content of the communication, at who it's sent to, and the context, and they make a finding specifically. In the Spectrum case, in the Harrington case, in the Dole Food case, in the Spalding Sports Worldwide case, these are all cases that Petitioner cites as not truly applying the primary purpose, but they do, and they remand to the lower courts to the extent that hasn't been done. I'm sorry. Please finish up. I'm done. Tell me what I'm missing here. All right. I read the briefs. I thought Petitioner was arguing for a significant purpose test or a primary. There's variations on that. But perhaps a percentage less than 50. Now I learn that Petitioner wants any legitimate purpose. Okay. Got it. Then you get up. I thought you were going to argue for a primary purpose test because that's what the brief said. Instead, now I hear a significant purpose. 60-40 might do. The 40 percent could be good enough in response to the Chief Justice. So can we all agree it's significant purpose? What am I missing? No, Justice Gorsuch. I do think the area of disagreement in the terminology may be fairly narrow. What is the disagreement? I mean, if 60-40 is good enough for the government, that would seem to be not a primary, but it's significant. I think the key is when there is a purpose that can be identified to be subsidiary, a legal purpose that can be identified to be subsidiary or a non-legal purpose that can be identified to be predominant, those communications should not be protected. I will tell you what we're worried about. Well, the 60-40, just help me out with this, okay, because I'm just struggling. I'll be honest. I'm struggling this morning. 60-40 you say is good enough. That's primary. 40 percent is primary. That's not primary counsel, right, legal? But it's significant. So, Justice Gorsuch, perhaps my mistake was attaching percentages to this. Well, that's not your mistake. We did that to you. I was trying to make the point, though, that judges don't do math. I was trying to agree with Justice Jackson. That's not how district courts are actually treated. Well, but sometimes they do. I mean, we all remember cases where the judge says, hey, there's a lot of legal here. But it's not the primary. We've all faced those cases. But you just conceded in that case that does exist in the world. That would be okay. That would be privileged if 40 percent the court thinks, or something like that. I think that in a case where a district court can identify a primary purpose that's not legal, that document is not privileged. So are you now retracting that concession to the Chief Justice? I did not intend to make that concession. I apologize. Okay, so it has to be 51 percent. No. No. I am really confused now. Thank you. At least I understand the source of the confusion. Is it the point? I just wanted to follow up on that so I can understand what you're trying to say in retracting or clarifying what we thought was a concession. It's what you're saying, that if a district judge actually decided it was 60-40, then he would have to say that it's not a primary purpose, but that district judges are not required to make those kind of fine-grained calls and put a number on it that there's a range of discretion. And if a district judge thinks it's a primary purpose, that the legal advice was the primary purpose, I mean, well, then it's privileged. But we're not going to require that kind of explanation in order to affirm the district judge. That's exactly right, Justice Barrett. I think we should not let the cases where it might be really hard for a district court to find a primary purpose to drive what the test should be. But I think also just stepping back. Before you step back, but the if, those cases where it's really hard, was your term, are a lot of cases where it's impossible to disentangle the two purposes. And the question is what to do in those cases. And I understand your answer to be district courts do not need to try to do some metaphysical parsing of those cases where they make a judgment that they can't disentangle the two purposes. That's right, Justice Kavanaugh. If you write an opinion saying it's a primary purpose test, it's always been the primary purpose test, there are hard cases and here's some guidance, lower courts, what to do in a hard case. Then we are entirely happy with that and we're entirely happy with adopting a lot of what the Kellogg opinion said and giving that guidance for the hard cases. Including internal investigations. Including internal investigations, which I think is a classic situation where it's really hard to extricate the purposes. But of course the last line of that opinion would be affirmed because this is exactly the opposite case. Here there's a finding that there was a non-legal purpose that was predominant and petitioners here saying that is a legal error. So we adopt the Kellogg standard, which was significant purpose, but we call it primary purpose? No, Justice Kavanaugh. Now you adopt the primary purpose test for? So one point is I do think the label matters because of the stability of the law and I think as a practical matter this is what courts have been doing. When they can identify a primary purpose, which sometimes is easy, sometimes is hard, but they do it in either of those situations. When they identify a primary purpose, that is the answer. When they are stuck, because for instance it's an internal investigation and how do you conceptually disentangle the two purposes? I think what the reporter's note indicates is as a practical matter they say, look, once there's a really meaningful legal purpose that's comparable to another, we think that's predominant. We have no problem with that solution. Counsel, does this make this case not those full 54 documents? But they could go back and argue that the court has to look at all thousand of them because if we say what you're saying, then I don't know why we say that if it's clearly predominant, it's okay because he's saying if there's any purpose, if it's significant, it makes it 50-50. That's what he's saying. He's defining significant not as those close cases. He's defining it as any percentage of legitimate reason. Him being your adversary, I'm sorry. I don't mean to be disrespectful. Justice Sotomayor, we disagree with the petitioner about that. We think that there are cases where you can identify that there's a primary non-legal purpose, tax return preparation, questions that are about tax returns. In fact, most of the 54 documents as I've gone through them, or I had my clerk go through them and categorize them for me, all of them were communications with the accountant, weren't they? The overwhelming majority were communications with the accountant, which I think shows just how broad petitioner's rule is. It's not just an accountant client privilege whenever you have a lawyer doing the work. It's whenever you have an accountant employed by a law firm. I think that really is a sea change. Justice Gorsuch, I'm reluctant to go back to you. But assuming we do what you do, I'm right that they could go back and say that it's not just these 54 documents, it's all thousands that the court looked at. It has to go back and decide whether primary meant really clearly primary or somehow they were close enough not to count. No, I don't think so, Justice Sotomayor. No, that's not what you want. But I'm asking you whether it's a risk. I think it's a risk of ruling in favor of petition. I don't think it's a risk of ruling in favor of petition. Certainly if we say it the way he does, which is any legitimate purpose no matter the percentage. But even if we take your situation, how would we get around not reopening the thousands of cases? So what we're arguing for here is the primary purpose test, the way it's been applied by decades, the way it's been articulated for decades, the way exactly the way it was applied by the district court here, which I think did a very careful job, particularly with the redactions. We're just saying, and the district court did not ever say, I'm stuck, these purposes, I can't separate them. They're really comparable. And so I think the legal purpose is significant. It's only that last I'm stuck portion where we're okay with the court offering a solution or offering guidance for that hard case. And do we have a sense of how often that happens? I mean, I know part of Justice Kavanaugh's question was there are a lot of those cases. I just don't know that that's true. It seems to me that district courts are not doing math. They have a lot of experience not only in this area, but in other document-related, privilege-related contexts, where they make a judgment call, as judges do, about what this particular communication relates to, what its point was, what its purpose is. And it seems to me that opposing counsel already conceded that if it's clear that you go through each document and you look at the various sections and even down to the sentence level and the judge can be doing his triage back and forth, and that really we're only talking about, quote, dual-purpose communications in the context of one that is hard. I agree, Justice Jackson. I think that there really are not a lot of decisions that explicitly grapple with this issue. And I think it's because, as a descriptive matter, what courts have been doing in situations where you're really down and you really can't tell the difference between the two is doing a tie-goes-for-the-runner in favor of the legal purpose in the sense that we think, look, when you're really motivated by the fact that you have to do an internal investigation, but you also are really motivated by the fact that you want legal advice about these potential legal payments, we think that, in reality, what's motivating you more is the interest in getting legal advice. I think that's what I meant. There are a lot of internal investigations, correct? Yes, there are. So the issue here is important in lots of situations, not all of which might reach a district judge. That's absolutely correct, Justice Kavanaugh. What courts have done most of the time is said internal investigations that have a meaningful legal purpose. You could have one that's just purely about corporate policy, for instance, that doesn't have any legal. I think that's what courts have done in practice. I think including something in the opinion that makes it clear that that's appropriate could be helpful to the courts. We're not trying to minimize that, but that is not at issue here. So if I could just understand, if we put the bona fide test to the side and just focus on Petitioner's original brief, which is the significant test, and you've made the case, and I think it's right, that there is a difference between the significant test and the primary purpose test because there are a category of cases where you might have a significant interest, but it is subsidiary, and you know it's subsidiary. But what is the danger of going to the significant test and making all of those communications privileged? Absolutely, Justice Kagan, and I think that's critical. What we're really worried about is the fact that most business communications in many, if not all, industries have one eye on legal implications. Every time you are putting together clinical trial data about a drug or the results of the simulation about the new car, you might have one eye on the legal implications, and you can include a lawyer on all those communications, not as a pretext, but because you want the lawyer to issue spots. And not just not as a pretext, but that's significant. I want my lawyer's eyes on this. I'm not sure if it's just significance. I don't know what significance exactly means, which is what the court said in Upjohn. It wasn't sure what substantial meant, and so to here. But, you know, eyes on to check for legal problems, that's not insignificant. I know that. And so all of that would be covered, wouldn't it? Absolutely, Justice Kagan, and I think that goes both to the administrability problem, but also to the sweeping sea change and how difficult it is to rein in any kind of significance test once you divorce it from the primary purpose framework. You can say in those cases the predominant purpose was getting the engineer's advice or the business advice. Otherwise, the kinds of communications that have to happen and that would be available to court proceedings would all become hidden. And I guess just to give one real-world example of that, the one court that we view as actually adopting a freestanding significant purpose test is the D.C. Court of Appeals, and in the Moore decision, which we cite on page 30 of our brief, the D.C. Court of Appeals relied on the significant purpose test to overturn a criminal threats conviction for a criminal defendant who in a prior proceeding had told his attorney, his defense counsel, that, to paraphrase, he hated the prosecutor and planned to kill her. And the D.C. Court of Appeals looked at that and said, well, no, that doesn't have a primary purpose of getting legal advice, but he was talking to his defense attorney, and we think that had a significant legal purpose and took that away from the courts and reversed the conviction on that basis. Now, I think that just illustrates the danger of what is significant is in the eye of the beholder, and once you divorce it from the primary purpose framework, you can get extremely sweeping rulings, both in the criminal context, but also in terms of sweeping in all internal communications at companies. Can I ask you what you think our role is in doing this? We're supposed to look to reason and experience. So do you think that our role is different from that of a state supreme court in a state, let's hypothesize, that doesn't have any case law on this issue? So that state supreme court would look to reason, and it would also look to experience in the rules that were adopted in other states, but it wouldn't be bound by those rules and it wouldn't be required to tally up how many adopted one test and how many adopted the other test. Do you think that is our role, or do you think it's something different? I think that's correct, Justice Alito. I don't think there's some sort of starry, decisive effect here to the body of case law such that you are bound to retain the primary purpose test. We just think there's really good reason to do so based on first principles and based on the weight of that authority and the destabilizing effect of deviating from authority. Well, what if we thought that reason and experience pointed in different directions? I think that it would be up to you what to do in that circumstance. I don't think you're bound, but I think experience should carry a little bit more weight because I think it's very easy to go down rabbit holes and think about this in an abstract way, but the reality is courts have been doing this for a very long time, and I think you can, in theory, come up with tests that sound good but might be really hard to operationalize, and the fact that courts have been doing it a certain way, that there really isn't a problem. As Justice Kagan pointed out, Petitioner points to one case that had a dissent as evidence of the widespread problem. I think that's extremely different than the situation in Upjohn. And so I think that if you think they go in both directions, I would hope you give more weight to experience. Can I ask you a question about the practicalities here of applying it? The burden is going to be on the person invoking the privilege, so if the person invoking the privilege comes forward and has to make a showing that it was the primary purpose, I mean, does that help us get away from putting a percentage on it? Because then isn't the district court either buying the argument or not buying the argument, and that alleviates a little bit of this concern that we're talking about? I think that does help, Justice Barrett. It is the proponent of the privilege's burden, and if they can't meet the burden because the district court is hopelessly confused, one reasonable approach in that case would be to deny the privilege because, of course, our basic default is that every man's evidence rule. But you said tie goes to the runner. It's true, and we're kind of cheating a little bit in favor of the privilege when we do that, and I think it's out of the recognition that there are just some contexts where it's not really the evidentiary problem, but there's a conceptual problem in separating those out. And so I don't think there are really decisions where the district court says,  That wouldn't be correct, but I think as a practical matter, the way district courts think about it is when we have these two purposes, they're kind of in equipoise, we think what really was driving it is the legal one. So do you think that in terms of what an opinion would look like if we rule in your favor, it might say something like, just to be clear, it is primary purpose, it's not significant purpose, we're not going to say really anything about what it means because we're just going to let courts continue to do what they do? Because we can't really say tie goes to the runner, right, when the burden is on the person invoking the privilege. We can't get into this whole put a percentage on it for the reasons that we've already talked about. So maybe it's best to say nothing? Is that the government's position? I don't think there's a problem in the lower court case law, so I think the court could say nothing. I think the court could also say primary purpose when there is an identifiable primary purpose that has to be the right one in situations where it's really close. As a practical matter, courts have sometimes viewed the legal purpose as predominating, the internal investigation context being the most salient example, and we do not intend to disturb that body of case law. I think it would be fine to say that too, but whether a long opinion or a short opinion in our favor, we don't have a very strong position on that. I guess just to make one last point, whether to intertwine a request for business and legal advice is often in the client's control, and I think that any more expansive test that allows even a little bit of legal purpose to privilege the whole communication would really create an incentive for clients, it's not always an option clients have, but would really create an incentive where possible to combine those two requests, where I think everybody agrees that in an ideal world, clients would make their business communications and then they would send an email to the lawyers about the same issue, maybe in a little more detail because of the special legal considerations that are likely to be chilled, they don't want raised anywhere else. And in an ideal world, I think we have those two emails, the legal one is withheld, the business one is produced, and I think the effective petitioner's rule would be to take us out of that world the vast majority of the time, because why not intertwine if that's going to mean you automatically get privilege? Thank you, counsel. There are government attorneys also who give advice to actors in the field, whether it's an FBI agent, can I conduct this search or not? You write memos to lawyers, U.S. attorneys, telling them your view of the law. If Mr. Levin wants to see non-privileged aspects of those, can he? I think if they're non-privileged and there's no other FOIA exemption or something that applies, yes, but I think that... So he could get a copy of your memo in this case? No, because I think that that would be our, I think there's a primary purpose of providing legal advice, and I think when you're looking, it gets a little bit confusing when you're looking at the client's communications to the attorney, which is most of what we've been talking about, versus the lawyer's communications back. Well, what if there wasn't one primary purpose in your memo, but there were three? Here are three points, and the judge is going to pick which one he thinks is primary. Assuming you sent it to the U.S. attorney and the U.S. attorney gives it to the FBI agent, and the FBI agent said, okay, I'm going to search Mr. Levin's client's files, can he get the memo because the pertinent issue is significant but not primary? Where an attorney's purpose is primarily providing business advice, not legal advice, and it does not reflect any communications conveyed in confidence by the client in the interest of getting legal advice that would be produced, I will say I don't write any memos like that. I think that that situation comes up much more in a corporate setting where you have a vice president and a general counsel. But I think if you're hiring an attorney for a legal service, there's not really going to be anything to redact out of that. Well, the government has a hierarchy, too. They don't call them presidents and vice presidents, but they call them directors and assistant directors, and when you're writing a memo about how to handle a particular case, I suspect it will have ongoing effect on how they do things. In other words, is the government treated the same way that you want to treat Mr. Levin's clients? Yes, the government is treated the same way as private parties. The only caution I have is I think whether it's a private party or the government, when somebody is retained for a legal service and providing advice on a legal service, those memos generally are not parsed by the courts to say, well, this is the business implication of this legal position, because the whole purpose of every portion of that document is providing legal advice. It's only if the attorney says, by the way, not based on any information you gave me, but separately I was looking at this, and here's a suggestion for how to run your business more efficiently. That portion could conceivably be taken out. Or how to enforce the law more efficiently. More efficiently. If it's a purely consideration of how to enforce the law more efficiently, yes, I don't think the attorney-client privilege would protect that portion. Justice Thomas? Justice Sotomayor? Just to follow up on Justice Barrett's question and to go back to something we discussed earlier, internal investigations, though, are something where you think the purposes are often intertwined, and thus it does not make sense in those circumstances for a district court to try to disaggregate. Is that accurate? That's right, Justice Kavanaugh. We think that is a general matter.  It's not categorical. But I do think that in the classic situation that the court was considering in Kellogg, for example, absolutely we completely agree with the result in that case, that that is a situation that should be privileged. Thank you. Justice Barrett? Justice Jackson?  Rebuttal, Mr. Levin? Where the Ninth Circuit went wrong is when it said you have to have a single primary purpose. That test is a mistake because it requires the kind of disentangling and ranking that is so hard to do. Let me be clear. Were the court just to write the Kellogg and Boehringer opinion, we would win. We do think bona fide is the right way to look at significance. But were you to say significance means important, we would win under that standard. You have to reverse the Ninth Circuit because the Ninth Circuit said you need a single primary purpose, and inherent in the word primary, it's the ordinary meaning of primary, is first. That means something has to be first, something has to be second, something has to be third. So we think that is critically where the Ninth Circuit went wrong. Second, let me say very quickly on the documents, to Justice Sotomayor's point, the answer, I think, to your question, Justice, is no. It would not reopen all of the documents. 1,600 were produced without a privilege objection. There were 300 that were disputed, and most of that dispute was resolved on other grounds. Either the privilege was upheld under the predominance test, or there was a waiver or a crime fraud issue or something else. So no, this doesn't reopen everything. Let me say something about the idea that, to the government's point, that internal investigations may be presumptively, most of the time, are going to be predominantly legal. The idea that we're going to start slicing and dicing and say, well, investigations, yeah, those are generally privileged, maybe tax stuff, not so, that is a recipe for confusion. It's too hard to separate. A lot of investigations have to do with tax law. Upjohn did. The court rejected that approach in Swindler where it didn't want to, even that was between criminal and civil. You shouldn't go down that road here. Let me say one thing about, the Chief Justice asked about the government's being susceptible to discovery. There's 13 amici in this case. They all came in on our side. These are lawyer groups and business groups who propound discovery as well as respond to discovery. That is, they often have an interest in getting documents from another side, so they are not just looking for the broadest possible privilege to protect their own clients' communications, they want a workable privilege so that it can be practically used in the real world of lawyering. If it weren't that way, you would have seen people coming in both directions on that. And finally, let me say something to Justice Alito's question about choosing reason or experience, and I see the tension, and I would say in Upjohn, the court went with reason over experience, and that has proven to have been a wise and workable decision for 40 years, and I urge the court to approach this the same way. Thank you, Counsel. The case is submitted.